## <u>AFFIDAVIT OF POSTAL INSPECTOR FREDERICK T. BUSCH</u>

I, Postal Inspector Frederick T. Busch, being duly sworn, depose and states as follows:

## INTRODUCTION

1.      I am currently employed as a Postal Inspector with the United States Postal Inspection Service, and I have been so employed since March 2006.  During my employment as a Postal Inspector, I have received training in conducting investigations involving crimes that adversely affect, or fraudulently use, the United States mail and Postal Service.  I have conducted or participated in criminal investigations of various violations of Title 18 involving financial crimes including mail, bank and wire fraud, identity theft, money laundering, and credit card fraud, as well as investigations involving narcotics trafficking and child pornography.

2.      In the course of my employment and in conducting or participating in these investigations, I have received training and have been involved in the use of investigative techniques such as: interviewing informants and cooperating witnesses; conducting physical surveillance; consensual monitoring and recordings utilizing both telephonic and non-telephonic communications; analyzing telephone and pen register data; and analyzing records including bank records.  I have prepared and/or executed numerous search and arrest warrants.

## PURPOSE OF AFFIDAVIT

3.      I submit this affidavit in support of criminal complaints charging LUCY OWORAE ("OWORAE") and her husband RICHARD OWORAE ("RICHARD") for wire fraud, aiding and abetting, in violation of Title 18, United States Code, Sections 1343 and 2, and false statements, in violation of Title 18, United States Code, Section 1001 (the "SUBJECT OFFENSES").

1

4.      I am familiar with the facts and circumstances of this investigation from my own personal participation and reports from other law enforcement agents.  I have probable cause to believe that OWORAE and RICHARD have been, and continue to be, engaged in a scheme to defraud the United States Small Business Administration ("SBA").  This affidavit is submitted for the limited purpose of establishing probable cause to believe that OWORAE and RICHARD have committed the SUBJECT OFFENSES, and does not include each and every fact known to me and other law enforcement officers involved in the investigation.

## PROBABLE CAUSE

### Relevant Individuals and Entities

5.      OWORAE, age 56, is a Permanent Resident Alien from Ghana, currently residing on Maxwell Street, Worcester, Massachusetts (the "Maxwell Street Residence") with her husband RICHARD.  OWORAE has been employed by United States Postal Service ("USPS") since at least November 10, 2019, and is presently assigned to the Central Massachusetts Processing & Distribution Center located on Main Street, in Shrewsbury, Massachusetts.

6.      RICHARD, age 59, is a Permanent Resident Alien from Ghana.  According to records maintained by the Massachusetts Secretary of State Corporations Division, RICHARD is the Resident Agent for Gimp Management & Tax Consult LLC (hereinafter "GMTC"), a limited liability company formed in Massachusetts on or about August 26, 2020.  According to the relevant Certificate of Organization, GMTC provides tax preparation, investment, cyber-security and business management consulting services.  That same record identifies GMTC's business address as 65 James Street, Suite 8A, Worcester, Massachusetts (the "SUBJECT BUSINESS OFFICE").

7.     Gimp Management Consultants (hereinafter "GMC") appears to be a fictitious business entity utilizing a variation on the GMTC business name.  I have searched for online records relating to any business operating as GMC, including official state incorporation records, business websites, or other websites relating to GMC.  To date, I have been unable to locate any records or other information that indicates that GMC currently, or previously, operates as a business.

*SBA's Economic Injury Disaster Loans*

8.     The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") is a $2.2 trillion economic stimulus bill passed by the 116th U.S. Congress and signed into law by President Donald Trump on or about March 27, 2020.  The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the SBA to offer Economic Injury Disaster Loan ("EIDL") funding to business owners negatively affected by the COVID-19 pandemic.

9.     To apply for EIDL funding, an applicant uses an SBA online portal to submit personal and business information in support of each EIDL application.  EIDL applicants generally do not have to submit supporting documentation.  However, the EIDL application includes a section in which the applicant must affirm that the information submitted is true and correct under the penalty of perjury and other applicable federal criminal statutes.[1]

---

[1] The SBA Loan Authorization and Agreement states: "Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan…. In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4)

10.     To complete the EIDL application, the applicant must provide information regarding the affected business entity, including but not limited to the ownership of the business, the number of employees, and the gross business revenues realized in the 12 months prior to the COVID-19 impact on the national economy.

11.     The SBA relies upon the information provided by the applicant to calculate the principal amount of money the small business is eligible to receive in the form of an EIDL loan. However, in conjunction with the submission of an EIDL application, by checking a box within the on-line application, an applicant may request and receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed.  The applicant is not required to repay the EIDL Cash Advance Grant even if (a) the SBA ultimately denies the loan application or (b) the applicant declines the EIDL that may be offered by the SBA at a later date.

12.     Loan amounts approved by the SBA are calculated based on the business Gross Revenues and Cost of Goods Sold for the 12 months prior to January 31, 2020. The basic loan amount is intended to cover six months of Gross Profit (Gross Revenue minus cost of Goods Sold). The maximum EIDL loan amount is $150,000 per entity.

13.     The SBA Office of Disaster Assistance (ODA) controls the EIDL program and is headquartered in Washington, DC.  The ODA has authority over all loans created and disbursed under the EIDL program.  The EIDL principal proceeds, and the previously described Cash Advance Grants, are solely funded by the SBA and are disbursed from government-controlled accounts maintained by the U.S. Treasury at Federal Reserve Banks throughout the United States.

---

suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015."

14.     Consistent with Congressional intent to assist small businesses during the pandemic, the provisions of the EIDL program require that loan proceeds must only be used on certain permissible business expenses, which can include payment of fixed business debts, payroll, accounts payable, and other business-related expenses that could have been paid had the COVID-19 disaster not occurred.

### Background and Scheme to Defraud

15.     Between July 31, 2020, and at least August 28, 2020, OWORAE and RICHARD schemed to defraud the SBA by submitting applications through SBA's website for at least three EIDL loans totaling approximately $194,700.  As outlined below, OWORAE and RICHARD fraudulently applied for EIDL loans, provided false statements on the loan applications, caused interstate wire communications in furtherance of the scheme to defraud the SBA, and misappropriated the loan funds for their personal use and benefit.

16.     I have reviewed SBA records and files associated with the following loans, including loan application documents, electronic communications and documents showing internet protocol ("IP") addresses associated with the applicant's device used to facilitate the loan application.  I have also reviewed telephone, internet, and records related to the bank accounts into which the SBA wire transferred loan proceeds.

### The Fraudulent GMC EIDL Loan

17.     On or about July 31, 2020, an application for an EIDL loan in the amount of $27,800 was submitted by GMC through the SBA application portal at www.SBA.gov. The application consists of numerous questions with "drop-down" answers that the applicant selects, checked boxes, as well as free-form text boxes where the applicant can type in answers.  According

to the SBA, the SBA Rapid Finance servers that host EIDL applications are located in Iowa.

18.     According to SBA records, the GMC application identified RICHARD as the owner of the business, and included RICHARD's actual social security number and date of birth, as well as a telephone number and e-mail address.   RICHARD identified GMC as a "Proprietorship," with a gross revenue for the previous 12-month period of $55,579.  RICHARD represented that GMC was established on February 5, 2018 and listed the SUBJECT BUSINESS OFFICE as the address for GMC.

19.     RICHARD provided Bank of America account number XXXXXXXX6741 (the "BofA 6741 Account") as the account into which the loan funds should be disbursed by wire transfer.  As part of the application process, the SBA verified that the BofA 6741 Account was a checking account related to RICHARD.

20.     Bank of America is a federally-insured financial institution headquartered in Charlotte, North Carolina with offices in Massachusetts and elsewhere.

21.     The IP address associated with the July 31, 2020, GMC application was 71.126.59.197, which is maintained by MCI Communications / Verizon Business.   Records obtained from MCI Communications / Verizon Business reveal that, on July 31, 2020, IP address 71.126.59.197 was assigned to the SUBJECT BUSINESS OFFICE, and associated with Individual #1, who is the listed Manager of GMTC (per records maintained by the Massachusetts Secretary of State Corporations Division).  The subject Verizon account was created on January 9, 2013.

22.     On or about August 1, 2020, RICHARD "E-signed" the loan agreement and Note, by doing so electronically identifying himself on the executed loan agreement as the "Owner/Officer" of GMC. As part of the process of executing the signed loan agreement and Note,

RICHARD acknowledged the Loan Authorization and Agreement, which states, in pertinent part, *"All representations in the Borrower's loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this loan."*

23.     The IP address associated with the device that RICHARD used on August 1, 2020 to sign the GMC loan electronically was 75.143.54.85, which is maintained by Charter Communications.  Records obtained from Charter Communications reveal that, on August 1, 2020, IP address 75.143.54.85 was assigned to RICHARD at the Maxwell Street Residence that he shares with OWORAE.

24.     On or about August 4, 2020, the SBA wire transferred $27,700 to the BofA 6741 account controlled by RICHARD.  According to the SBA, all loan disbursements are processed through its office in Denver, Colorado.

25.     Bank of America records reveal that the BofA 6741 Account was a personal checking account with RICHARD as the sole signatory.  The beginning balance in the BofA 6741 Account (immediately preceding the August 4, 2020 deposit of $27,700) was approximately $540. In addition to the August 4, 2020, deposit of $27,700 from the SBA, deposits from the Massachusetts Department of Unemployment Assistance (between August 4, 2020, and October 27, 2020) totaling $5,283 were identified.[2]

26.     Following the August 4, 2020 deposit of $27,700 from the SBA, withdrawals from the BofA 6741 Account included numerous ATM cash withdrawals, point-of-sale ("POS") purchases at various merchants, credit card payments, and money transfers to Sendwave.com

---

[2] In addition, various ATM cash deposits and cash withdrawals were made from approximately August 4, 2020 through October 27, 2020.  The source of the cash deposits is presently unknown.

("Wave"), a money-remitter business based in Tanzania which provides money transfer services to numerous African countries, including Ghana.  Between August 5, 2020 until October 26, 2020, a total of at least $16,500.32 of the proceeds of the fraudulent GMC loan was transferred, using the Wave telephone app, from the BofA 6741 account to the accounts of numerous individuals residing in Ghana.

27.     Between July 2020 and October 2020, RICHARD made three apparent rent payments from the BofA 6741 Account totaling approximately $1,995 related to "GIMP Mgmt" payable to 65 James Street Place Inc.  No other business-related disbursements from the SBA loan funds were identified.

28.     As of October 27, 2020, the remaining balance in the BofA 6741 Account was approximately $349.

### *The GMTC EIDL Loan*

29.     On or about August 10, 2020, an application for an EIDL loan in the amount of $84,000 was applied for in the name of GMTC through the SBA application portal at www.SBA.gov.

30.     According to SBA records, the GMTC application identified RICHARD as the individual owner of the business, with an address of the Maxwell Street Residence.  The GMTC application also included RICHARD's actual social security number and date of birth, as well as telephone number and e-mail address.  RICHARD identified GMTC as a "General Partnership," with a gross revenue for the previous 12-month period of $168,000.  The GMTC application indicated that the business was established on June 5, 2011.

31.     The GMTC application provided Hometown Bank account number XXXXX0964 (the "Hometown 0964 Account") as the account into which the loan funds should be disbursed. As part of the application process, the SBA verified that the Hometown 0964 Account was a checking account for which RICHARD was a signatory.

32.     Hometown Bank is a federally-insured financial institution headquartered in Oxford, Massachusetts with offices in Massachusetts and Connecticut.

33.     The IP address associated with the GMTC application submitted on August 10, 2020 was 75.143.54.85, which is maintained by Charter Communications.  Records obtained from Charter Communications indicate that IP address 75.143.54.85 was assigned to RICHARD at the Maxwell Street Residence when the GMTC loan application was submitted.

34.     On or about August 28, 2020, RICHARD "E-signed" the loan agreement and Note electronically identifying himself on the executed loan agreement as the "Owner/Officer" of GMTC.  As he did while signing for the GMC loan, RICHARD acknowledged and certified that all of the information contained on the GMTC loan application was true and correct.

35.     The IP address that RICHARD used at the time to sign the loan electronically was 75.143.54.85.  Records obtained from Charter Communications confirmed that the IP address was assigned to RICHARD at the Maxwell Street Residence when he signed the loan agreement on August 28, 2020.

36.     On or about August 28, 2020, the SBA attempted to wire transfer $84,000 to the Hometown 0964 Account.  That transfer was rejected because the Hometown 0964 Account was closed.  According to records provided by Hometown Bank, the Hometown 0964 Account was closed on or about April 27, 2020.  On or about August 29, 2020, RICHARD provided a new bank

9

account for the GMTC loan proceeds to be wired into; however, as of the date of this affidavit, the SBA has not disbursed any loan funds to GMTC.

37.     According to GMTC's website at www.gmtcusa.com, RICHARD is "[t]he founding partner of GIMP Management and Tax Consultancy (GMTC), USA.  He is in charge of administration and head of the Business and Non-profit management department of GMTC."

38.     As previously noted, according to records maintained by the Massachusetts Secretary of State Corporations Division, GMTC was incorporated on or about August 26, 2020 – sixteen days after the GMTC EIDL loan application was submitted and two days before RICHARD electronically signed the loan agreement.

### The Fraudulent "U.S. Postal Services" EIDL Loan

39.     On or about September 28, 2020, a USPS employee working at the Central Massachusetts Processing & Distribution Center in Shrewsbury ("Employee #1"), received a loan document from the SBA addressed to the "U.S. Postal Services P&DC."  The document referred to Loan Number 6075508207 in the amount of $82,900, and indicated that deferred monthly payments of $404 were to begin on August 11, 2021.  Employee #1 contacted the SBA, which advised Employee #1 that details of the loan could not be discussed because Employee #1's identity did not match that of the loan applicant on file.  Employee #1 then reported the matter to his/her USPS supervisor who, in turn, notified investigators.

40.     Investigators interviewed the USPS facilities manager who advised that he was unfamiliar with the loan, and that any loans taken out by the USPS would be handled by a contract specialist at USPS offices in Windsor, Connecticut and that several approvals would be required. including that of the district finance manager.

41.     I obtained records from the SBA regarding Loan Number 6075508207.  On or about August 4, 2020, an application for an EIDL loan in the amount of $82,900 was submitted using the business name "U.S. Postal Services, P&DC" through the SBA application portal at www.SBA.gov.

42.     According to the SBA records, the "U.S. Postal Services, P&DC" application identified OWORAE as the individual owner of the business, identified the Maxwell Street Residence as her address, included OWORAE's actual social security number and date of birth, and provided a contact telephone number and e-mail address.  OWORAE identified the type of business as "Independent," with a gross revenue for the previous 12-month period of $165,620. The "U.S. Postal Services, P&DC" application indicated that the business was established on November 11, 2017.  OWORAE's social security number was entered as the business EIN/SSN for the sole proprietorship.

43.     Sprint Spectrum records relating to the telephone number included on the "U.S. Postal Services, P&DC" application identified OWORAE as subscriber for the account since November 2016, with an address of the Maxwell Street Residence.

44.     The "U.S. Postal Services, P&DC" application provided TD Bank account number XXXXXX3124 (the "TD 3124 Account") as the account into which the EIDL loan funds should be disbursed.  As part of the application process, the SBA verified that the TD 3124 Account was a checking account maintained by OWORAE.

45.     The IP address associated with the August 4, 2020 "U.S. Postal Services, P&DC" application was 75.143.54.85.  Charter Communication records reflect that the IP address was assigned to RICHARD at the Maxwell Street Residence when the loan application was submitted.

It is also the same IP address that was used to (a) sign the fraudulent GMC loan documents and (b) to submit and sign the fraudulent GMTC loan documents described above.

46.     On or about August 10, 2020 – the same day that the GMTC loan application was submitted – OWORAE "E-signed" the loan agreement and Note and, in doing so, electronically identified herself on the executed loan agreement as the "Owner/Officer" of the "U.S. Postal Services, P&DC."  OWORAE acknowledged and certified that all information contained on the "U.S. Postal Services, P&DC" loan application was true and correct.

47.     The IP address used by OWORAE to sign the loan electronically on August 10, 2020 was 75.143.54.85.  As in other instances described herein, Charter Communications records reflect that the IP address was assigned to RICHARD at the Maxwell Street Residence when the "U.S. Postal Services, P&DC" loan agreement was electronically signed.

48.     On or about August 12, 2020, the SBA wire transferred $82,900 to the TD 3124 Account controlled by OWORAE.  As noted above, all SBA loan disbursements are processed through their Denver office.

49.     I have reviewed TD Bank records for the TD 3124 Account.  Those records confirm that OWORAE, with an address of the Maxwell Street Residence, is the sole account holder.  In addition, the TD 3124 Account is used by OWORAE to receive her USPS salary via direct deposit. The beginning balance in the account, immediately preceding the SBA wire transfer, was approximately $910.  Following the August 12, 2020 SBA wire of $82,900, withdrawals from the TD 3124 Account included numerous ATM cash withdrawals and electronic payments to various bank and department store credit cards.  The records also revealed numerous grocery store and gasoline purchases, as well as point-of-sale purchases at Bed Bath & Beyond, BJ's Wholesale and

Walmart.   These amounts exceed OWORAE's bi-monthly salary deposits.

50.     I have reviewed photos of OWORAE and RICHARD, including photos contained on their Massachusetts driver's licenses and Permanent Resident Alien cards.  I have further reviewed TD Bank ATM surveillance camera images relating to ATM cash withdrawals from the TD 3124 Account and believe RICHARD was responsible for all of those cash withdrawals.

51.     On or about September 24, 2020, OWORAE drafted check #123 from the TD 3124 Account in the amount of $7,500.  Check #123 was made payable to Individual #2 and had the handwritten note "Business" in the memo line of the check.  Individual #2 used the $7,500 from OWORAE to purchase an official bank check in the amount of $5,630, made payable to "Copart." According to its website, "Copart" is an online automobile auction selling used, wholesale, or salvage vehicles.

52.     I have reviewed USPS personnel records which identify Individual #2 as a USPS employee assigned to Processing & Distribution Center in Shrewsbury, the same location that OWORAE is also assigned.

53.     To date, investigators have been unable to identify any expenditure from the proceeds of the "U.S. Postal Services, P&DC" loan that was related to a legitimate business expense as specified in the SBA EIDL Loan Agreement.

54.     On or about September 28, 2020, TD Bank froze the TD 3124 Account, due to suspicious activity on the account.  At that time, the account had a balance of approximately $70,147.28.  A representative from TD Bank informed me OWORAE and RICHARD have made repeated requests for the funds be released.

55.     Specifically, OWORAE and RICHARD visited the Worcester branch of TD Bank on numerous occasions to request the freeze on the TD 3124 Account be lifted.  I have interviewed Individual #3, the branch manager of TD Bank in Worcester regarding his meetings with OWORAE and RICHARD.

56.     According to Individual #3, on or about October 3, 2020, OWORAE and RICHARD met with Individual #3 at the TD Bank Worcester branch. OWORAE told Individual #3 that she was operating an export business for which she was paid to collect items to load into shipping containers and ship back to Ghana.  OWORAE told Individual #3 that the funds frozen in her account were from an SBA EIDL loan relating to that shipping business.  Individual #3 informed OWORAE that he needed supporting documentation (such as tax returns or IRS 941 forms) showing quarterly revenues for the business before TD Bank would lift the account freeze. Individual #3 recommended that OWORAE obtain a business certificate for her business from the City of Worcester, which would enable her to open a business bank account.

57.     On or about October 9, 2020, OWORAE and RICHARD again met with Individual #3 at the TD Bank Worcester branch.  OWORAE and RICHARD provided Individual #3 with a City of Worcester Business Certificate in the name of Lurich Ventures.  The certificate identified OWORAE as operating Lurich Ventures as a sole proprietorship, with an address of the Maxwell Street Residence.

58.     On or about October 16, 2020, RICHARD dropped off an envelope for Individual #3 at the TD Bank Worcester branch.  The envelope contained a 2019 Federal 1040 tax return in the name of OWORAE that showed an adjusted gross income of $1,840.  The tax return document also included a Schedule C for Lurich Ventures that disclosed gross receipts of $164,000 and an

14

Employee Identification Number (EIN) XX-XXXX494.

59.     RICHARD was listed as the tax return preparer under firm name of GMTC.  The tax return was undated and unsigned, and did not disclose income for OWORAE's employment with the USPS.

60.     I contacted the City of Worcester Clerk's Office.  A representative of that office informed me that, on or about October 6, 2020, OWORAE filed an application for application for a business certificate for Lurich Ventures.  OWORAE advised an employee at the Clerk's office that Lurich Ventures was an online business operated from her home address (i.e. the Maxwell Street Residence), which was listed on the certificate.

61.     The SBA confirmed that no loan application had been submitted for Lurich Ventures.

62.     I queried the Massachusetts Secretary of State Corporation Division database for Lurich Ventures (both by name and EIN XX-XXXX494) with negative results.

## CONCLUSION

63.     Based on the foregoing, there is probable cause to believe that, from on or about

July 31, 2020 until on or about August 28, 2020, Lucy OWORAE and Richard OWORAE engaged

in a scheme to commit wire fraud, aiding and abetting, in violation of Title 18, United States Code,

Sections 1343 and 2, and made false statements, in violation of Title 18, United States Code,

Section 1001.


Sworn to under the pains and penalties of perjury,


Frederick T. Busch
Postal Inspector
United States Postal Inspection Service

Sworn to via telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on January  20  , 2021                          11:39 a.m.


Honorable David H. Hennessy
United States Magistrate Judge

16